UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KIMBERLY WILLIAMS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| vs. | ) | No. 4:05CV2176-SNL |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Petitioner's motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is before the Court. The Government has responded and petitioner has replied.

Petitioner was initially charged in a 17-count indictment alleging bank fraud, wire fraud, money laundering and tax evasion. Pursuant to a plea agreement, the defendant entered a plea of guilty to Count 16 of the indictment following which the Government agreed to dismiss all other counts in the indictment with the exception of Count 17 which was a forfeiture count. The Court accepted the plea and on August 11, 2005 sentenced the defendant to custody of the Bureau of Prisons for a term of 18 months following which the defendant was sentenced to a period of 36 months supervised release.

Petitioner urges that her counsel was ineffective, that she was denied due process of law pursuant to the Fifth Amendment to the United States Constitution and that she was also denied right to a trial by jury.

Before considering petitioner's points on the merits, a recitation of the facts is necessary.

In the plea agreement the parties recommended that the Court utilize the Sentencing Guidelines for the purpose of calculating a range of punishment. The parties are in agreement as to how to make the calculation with the exception of the application of § 2T1.1(b)(2). That sub-section provided "If the offense involved sophisticated means, increase (the base offense level) by two levels." Petitioner's counsel asserted the offense did not involve sophisticated means while the Government contended that it did. If petitioner was correct, the total offense level would be 13; otherwise, the total offense level would be a 15.

The parties waived their right to appeal all sentencing issues including any issues relating to the determination of the total offense level.

At the time of taking the plea, the Court explained to petitioner the methodology for calculating the total offense level pursuant to the terms of the agreement and then utilized the sentencing table to illustrate how the range of punishment would be calculated as to imprisonment. The Court gave illustrations from the table as to what the range would be if the total offense level was a 13 or a 15 and the criminal history category was a 1 or 2. After making this illustration, the Court stated,

"I am sure you have gone over this with Mr. Hale. Is that correct?

Ms. Williams: Yes sir.

The Court: This is all a little complicated. Do you have any questions about it?

Ms. Williams: No sir."

Transcript, page 7.

The Court then discussed with the petitioner the potential for providing substantial assistance to the Government and the possibility of a recommendation for leniency in sentencing. The Court then stated:

> "This, too, is a little complicated. Do you have any questions at all about it?
>
> Ms. Williams: No sir.
>
> Mr. Hale: Judge . . .
>
> The Court: You have discussed these things with Mr. Hale haven't you?
>
> Ms. Williams: Yes."

Transcript, page 9.

At that point, counsel raised an error on page six of the plea agreement. The seventh line from the top read,

> "The defendant understands that this cooperation will not benefit her directly in any manner, but, if she provides substantial assistance, will be used to benefit her husband, Christopher Williams, in his sentencing."

Counsel for the Government stated that if the petitioner did provide substantial assistance it would directly benefit her as opposed to benefitting her husband. Although the plea agreement was not specifically modified by this discussion, it was, in fact, as the Court further discussed with the petitioner that should she provide substantial assistance as determined by the Government acting through the United States Attorney then it would directly benefit her and the Government would recommend leniency in sentencing; otherwise, it would not.

3

Following that dialogue, the Court stated,

"Do you have any questions at all about that, Ms. Williams?

Ms. Williams: No sir."

Transcript, page 11.

The Court further questioned petitioner as follows:

"Ms. Williams, did you have any question at all as to what your agreement

is with the Government?

Ms. Williams: No sir."

Transcript, page 11.

Further dialogue revealed the following discourse between the Court and petitioner:

"The Court: Mr. Hale has been your lawyer throughout, has he not?

Ms. Williams: Yes, he has.

The Court: You've had various opportunities to go over the case with him?

Ms. Williams: Yes, I have.

The Court: I assume you are satisfied with him as your attorney?

Ms. Williams: Yes I am."

Transcript, page 14.

The Court had this final dialogue with the petitioner:

"The Court: Ms. Williams, could you turn to the last page of your copy,

page 19 (referring to the plea agreement). I see the signature there of

Kimberly Williams. Did you sign that?

Ms. Williams: Yes, I did.

The Court: Did you read this document before you signed it?

Ms. Williams: Yes, I did.

The Court: Did you go over it with Mr. Hale before you signed it?

Ms. Williams: Yes, I did.

The Court: Is there anything in here you do not understand?

Ms. Williams: No."

Transcript, pages 16 and 17.

At the time of sentencing, the Court first considered whether the offense involved the use of sophisticated means. Counsel for the Government and for the petitioner made substantial arguments supporting their respective positions. After hearing the argument, the Court ruled that Count 16 did involve sophisticated means and determined that two levels should be added in calculating the total offense level pursuant to § 2T1.1(b)(2). In making this determination, the Court found that Count 16 contained language in addition to the charge of failure to file a tax return. The additional language was that "by failing to pay the Internal Revenue Service said income tax and by concealing and attempting to conceal from all proper officers of the United States of America her true and correct income." Transcript, page 14.

The plea agreement also provided that the defendant and the Government agreed that paragraph 4 of the Plea Agreement which contained a stipulation of facts could be considered as relevant conduct pursuant to § 1B1.3 of the Sentencing Guidelines. At the time of the plea, the defendant stated that all of the factual material set out in paragraph 4 of the agreement was accurate.

5

At the time of the sentencing, the Court stated "Now for the purpose of ultimately determining how to sentence the defendant, I repeat again that other than the one disputed area, the parties recommended that I use the Sentencing Guidelines, albeit on an advisory basis, as the methodology for calculating the range of punishment."

"The parties also recommended that I sentence the defendant within the range that was ultimately determined to be correct. I have agreed to do that and will follow the recommendations of the parties in that regard." Transcript, pages 12 and 13.

The Court determined the range of punishment as to custody was 18 to 24 months. After hearing the statements of defendant, her attorney and various witnesses, the Court concluded,

"I am going to accept the recommendation of Mr. Hale. I am going

to sentence the defendant at the low end of the Guideline Range." Transcript, page 26.

The Court also stated that,

"It is the opinion of the Court that the sentence that I have just set out

does properly address the sentencing objectives of just punishment,

general deterrence and incapacitation. I levy the sentence for those

reasons."

"In addition, I levy the sentence at the request of counsel for the

defendant to sentence the defendant at the low end of the Guideline

Range. In doing all this, I have attempted to follow the provisions

of 18 U.S.C. § 3553, in levying the sentence which I determine under

all of the circumstances is a reasonable sentence."

Transcript, page 27.

For the purpose of considering petitioner's assignments, only those involving ineffective assistance of counsel are available to her. The parties set out in the plea agreement, page 4:

> "The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceedings, including one pursuant to Title 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."

(Petitioner asserts no claim of prosecutorial misconduct).

**Discussion**

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also U.S. v. Coleman, 2005 WL 3021104 (E.D. Mo. 2005).

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel Hill v. Lockhart, 474 U.S. 52, 58 (1985). The performance prong of the Strickland test remains the same. Id. at 58-59. To establish prejudice in the context of the plea process the defendant must show "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The standard has recently been defined by the United States Court of Appeals for the Eighth Circuit as follows:

> "An ineffective assistance claim generally requires two showings.
> 'First the defendant must show that counsel's performance was

> deficient.' Strickland, 466 U.S. at 687, 104 S.Ct. 2052. This entails 'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id. Second, the defendant must show prejudice. Id. To show prejudice, he or she must prove that 'counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable.' Id.' accord Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination; rather, the focus of the question of prejudice is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair')."

Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004). A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). Ordinarily, if the defendant cannot prove prejudice it is not necessary to address whether counsel's performance was deficient. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996); DeRoo, at 925.

**American Bar Association (ABA) Standards**

Petitioner asserts that her counsel, Larry D. Hale, did not meet the ABA standards relating to defense function. Neither this Court nor the United States Court of Appeals for the Eighth Circuit uses the ABA standards for the purpose of determining whether counsel's assistance was ineffective. The standard is as announced in the preceding paragraphs.

**The Sentencing Enhancement**

As stated in the Plea Agreement, the parties were in disagreement as to whether the provisions of 2T1.1(b)(2) were applicable. Defendant's counsel vigorously argued that petitioner entered a plea of guilty to a tax evasion charge only. Such a charge does not involve "sophisticated means" and accordingly the base offense level should not be increased by two levels. The Court resolved the factual issue and determined that sophisticated means were used, and enhanced the

8

base offense level by two levels. Petitioner asserts that this is in violation of <u>Blakeley v. Washington</u>, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and <u>U.S. v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Had the Court applied the Sentencing Guidelines as mandatory, petitioner's argument would have merit; however, the Court utilized the Guidelines as advisory only.

In the dialogue between the Court and defendant at the time of accepting the plea, the Court stated,

> "Now we have been using a certain set of rules and regulations for the purpose of calculating how to sentence somebody and we call these Sentencing Guidelines. These Guidelines, at one time, were mandatory but they are now advisory only. Nonetheless, you and the Government have agreed to recommend to me that I use those Guidelines for the purpose of calculating the range of punishment in your case as well as how to sentence you." Transcript, page 3.

At the sentencing hearing, the Court also determined that the Guidelines would be considered in an advisory way. In beginning the sentencing, the Court stated,

> "In the Plea Agreement, both the defendant and the Government recommended that I consider advisory sentencing guidelines for the purpose of calculating a range of punishment and then sentencing the defendant within that range."

Transcript, pages 2 and 3.

In announcing the range of imprisonment as set out by the Guidelines, the Court stated,

> "Now for the purpose of ultimately determining how to sentence the defendant I repeat again that other than the disputed area, the parties recommended that

I use the Sentencing Guidelines, albeit on an advisory basis, as the methodology

for calculating the range of punishment."

"The parties also recommended that I sentence the defendant within the range

that was ultimately determined to be correct. I have agreed to do that and will

follow the recommendation of the parties in that regard."

Transcript, pages 12 and 13.

In a further dialogue, the Court stated,

"As I indicated at the beginning of these proceedings, the parties did make certain

recommendations to me and one was that I follow the Advisory Guidelines in

this matter; that I use the Guidelines for the purpose of calculating the range of

punishment and then the request was that I sentence the defendant within the

range of punishment set out by the Guidelines."

"Again, I am going to stay with that recommendation and accept it

and not depart in any way from the Guideline range that has been established."

Transcript, page 25.

It is obvious from this record that the Court did not treat the Guidelines as mandatory but only in an advisory way. Accordingly, the Court did not violate the Blakeley and Booker decisions. The counsel of petitioner did not fall below an objective standard of reasonableness in representing his client as to this point. U.S. v. Salter, 418 F.3d 860 at 862 (8th Cir. 2005). (Because the district court calculated the sentencing range properly and treated the Guidelines as advisory, we conclude there is no Booker error). See also U.S. v. Garcia-Gonon, 433 F.3d 587, 591-593 (8th Cir. 2006), U.S. v. Varnedore, 422 F.3d 1143, 1144 (8th Cir. 2005).

The Court had the right to determine the sentencing enhancement controversy by a preponderance of the evidence. In making the decision, the Court relied on the wording of the indictment itself and the statement of facts set out in the plea agreement which the petitioner admitted were true and accurate. The Court also considered all of the arguments of counsel. Petitioner's counsel urged the point strongly on her behalf and the fact that he did not prevail in the argument does not suggest he was ineffective.

**Miscellaneous Assignments of Errors of Counsel for the Petitioner**

1. Lack of understanding of counsel with criminal practice and procedure.

Before engaging in private practice, petitioner's counsel served several years as an Assistant United States Attorney. Such counsel has tried cases before this Court. In addition counsel has represented numerous defendants before this Court with respect to pleas, sentencings and other criminal matters such as hearings on petitions to revoke supervised release or probation. It is this Court's opinion that such counsel is well informed and has had substantial experience both in prosecuting and defending persons accused of violations of the United States laws.

In fact, counsel for the petitioner negotiated a plea bargain for her that was remarkable. In the agreement, the government was willing to dismiss all counts but one and the remaining count was the one in which petitioner entered a plea of guilty. As stated, one of the counts was a forfeiture count as well. The government also agreed that it would bring no further federal prosecution against this petitioner relative to her bank fraud, wire fraud and money-laundering. Counsel persuaded the Court to allow the petitioner to remain free on her bond throughout and after sentence to surrender voluntarily. Petitioner's husband, an original defendant, was dismissed as part of the agreement and allowed to participate in pre-trial diversion. The request of

11

petitioner's counsel to sentence the petitioner at the low end of the Guideline Range was part of the Court's reasoning in giving the petitioner the benefit of that sentence. It would appear from the record and the recollection of the Court that the outcome of this case would have been no different had another attorney possibly represented petitioner more ably.

2.  Failure of counsel to persuade the Government to file a § 5K1.1 motion.

The discretion to file a request for leniency in sentencing is in the hands of the Government acting through the United States Attorney. If there was a failure of the petitioner to qualify for this opportunity it was because of her action or lack of action. In the plea dialogue, the Court went over this possibility with the petitioner and suggested to her that substantial assistance must be performed by her, not by counsel. Thus, it was not counsel's lack of due diligence or proper representation of his client that caused petitioner to be unable to qualify for this benefit.

3.  Failure of counsel to be informed about ABA standards.

As previously mentioned, it is not incumbent upon this Court to follow the standard in any area of the criminal law set by the ABA. The Court follows the Criminal Procedure Rules, the rules of this Court and the law of this Circuit. Accordingly, it was not a breach of counsel's duty to petitioner to fail to discuss ABA standards with her.

4.  Failure of counsel to discuss adequately the Plea Agreement and other aspects of the case.

It appears obvious to this Court that this suggestion is unfounded. As stated, counsel worked out a rather remarkable plea agreement for petitioner. At the time of the plea dialogue, the Court went over the agreement carefully with petitioner and frequently inquired if petitioner understood and if she had discussed it with her counsel, and throughout, she always replied in the affirmative. During the plea dialogue, petitioner stated that she had no question at all as to what her

agreement was with the government, Transcript, page 11; that she read the agreement before she signed it and went over it with her attorney before she signed it and understood everything in the agreement, Transcript, page 17.

Finally, this dialogue ensued at the time of the plea:

"The Court: Mr. Hale has been your lawyer throughout, has he not?

Ms. Williams: Yes, he has.

The Court: You've had various opportunities to go over the case with him?

Ms. Williams: Yes, I have.

The Court: I assume you are satisfied with him as your attorney?

Ms. Williams: Yes, I am."

Transcript, page 14.

Accordingly, the Court finds there is ample evidence to show that counsel communicated with petitioner, that petitioner was intimate with the terms of her plea agreement and was satisfied with her counsel. The Court is hard-pressed to find that these facts even remotely suggest that counsel breached the standard of care he owed to petitioner.

5.  Mischaracterization by counsel of the probable outcome of a guilty plea or a trial.

During the plea dialogue between the Court and the petitioner, the Court emphasized the downward departure for acceptance of responsibility that petitioner was to receive, through the plea agreement, but that she would not have received had there been a trial and she had been found guilty.

Pursuant to the Sentencing Guidelines which the parties recommended that the Court follow for the purpose of calculating a range of punishment, there was a total offense level of 15 and a

criminal history category of 1. Had petitioner not received the favorable downward adjustment of three levels for acceptance of responsibility, the total offense level would have been 18. The range of punishment for incarceration would have been 27 to 33 months. Other factors could have been involved which easily could have increased the range. While petitioner asserts in her motion and affidavit that counsel did not fully inform her in this area, counsel's affidavit and the plea discourse refutes this assertion. The Court in the examination of all of the facts in this case including all the dialogue that was had with petitioner suggests that petitioner was well aware of the problems she could face in going to trial and receiving possible guilty verdicts as compared to implementing the plea agreement which counsel negotiated for her.

6. Failure of counsel to present to the Court necessary information as to petitioner's background education, mental and emotional stability and being a care-giver to her daughter.

The Court considered all of these problems at the time of sentencing and in the preparation for sentencing. In this regard, the Court examined carefully all of the background material as it was set out in the presentence investigation report. At the request of counsel, at the time of sentencing, the Court heard impassioned pleas and arguments of family and friends concerning the needs of petitioner's daughter. All of these factors were taken into consideration by the Court in determining the ultimate sentence to be imposed. Counsel did not breach the standard of care in this regard as the Court had available this material as background to aid in determining how to sentence petitioner.

7. Ineffectiveness of Counsel preventing petitioner from making a knowing and voluntary plea.

The facts simply do not support this assertion. Throughout the plea dialogue, the Court continued to inquire if petitioner understood the agreement and the nature of the plea and had any

14

questions about the agreement.  Throughout, petitioner said she understood and had no questions.  The Court inquired of petitioner at the taking of the plea if anyone had threatened her, intimidated her or coerced her or harassed her in any way to cause her to enter the plea.  She indicated in the negative.  She also indicated that no one had made any promises to her to cause her to enter the plea other than those in the written agreement.

**Conclusion**

Petitioner has the burden to establish ineffective assistance of counsel.  She has not sustained this burden.  There is nothing to show that her counsel's performance was deficient.  There was nothing to show that he made errors so serious that he was not functioning as the counsel guaranteed petitioner by the Sixth Amendment.  There is nothing to show that if counsel committed errors, they were so serious as to prevent her from having a fair proceeding.  Accordingly, petitioner's request should be denied.

Dated this __16th__ day of March, 2006.

_/s/ Stephen N. Limbaugh_
SENIOR UNITED STATES DISTRICT JUDGE